

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

*ORIGINAL*

| | |
|---|---|
| RED HAT, INC., | ) |
| | ) |
| Plaintiff, | ) Civil Action No.: 0 3 - 7 7 2 |
| | ) |
| v. | ) |
| | ) |
| THE SCO GROUP, INC. (formerly Caldera | ) |
| International, Inc.), | ) **Jury Trial Requested** |
| | ) |
| Defendant. | ) |
| | ) |

## COMPLAINT

### I. *Introduction*

1.    The plaintiff, Red Hat, Inc. ("Red Hat"), has commenced this action in response

to the unfair, untrue and deceptive campaign now being waged by the defendant, The SCO

Group, Inc. ("SCO"), to harm the market for Red Hat's highly successful operating system based

on the open source LINUX kernel.  As described in detail below, SCO's tactics have centered on

the use of highly publicized, but vague, general and unsupported claims that portions of the

LINUX kernel and operating system contain intellectual property allegedly owned by SCO, in

hopes that such unfair, untrue and deceptive statements will cause users and potential users of

LINUX to re-evaluate their plans to deploy LINUX as a primary component of their Information

Technology infrastructure.

2.    SCO's claims are not true, and are solely designed to create an atmosphere of

fear, uncertainty and doubt about LINUX.  SCO's own conduct demonstrates this fact.  For

example, beginning in or about March 2003, SCO made numerous public statements that

LINUX, in some unspecified way, contains SCO trade secrets, and that LINUX users might be

liable to SCO for using those trade secrets if they continue to use LINUX. Also at that time,

SCO filed a lawsuit against IBM claiming that, among other things, IBM had improperly

contributed UNIX software code trade secrets to LINUX. However, SCO never publicly

identified a single line of the publicly available LINUX source code that allegedly contains even

one SCO trade secret. In fact, at the same time that SCO was contending that the LINUX

operating system included SCO's trade secrets without authorization, SCO itself continued to

offer its own version of LINUX, thereby continuing to make publicly available the very

computer source code that SCO was claiming to be "secret."

　　　　3.　　　SCO apparently recognized that the supposed "secrets" that SCO itself was

making publicly available through its own LINUX distribution do not qualify as trade secrets.

Accordingly, SCO recently has changed the focus of its campaign against LINUX. SCO, which

has itself developed and sold a version of LINUX for years, now claims to have suddenly

discovered that LINUX contains computer software code that was copied from another,

competing operating system that SCO claims to own – UNIX. Again, although the LINUX

source code is publicly available, SCO repeatedly has refused to identify publicly even one line

of SCO source code that was copied.

　　　　4.　　　SCO's tactics are as obvious as they are unlawful. SCO makes grand public

claims about the potential liability of anyone using LINUX because of alleged violations of

SCO's purported intellectual property, but then refuses to support those claims with the detail

that would exist if SCO's claims were true.

　　　　5.　　　The reasons for SCO's unfair, untrue and deceptive campaign against LINUX are

equally obvious. SCO is an unprofitable company that purports to have acquired certain rights to

the UNIX operating system. In fact, SCO and its predecessor-in-interest to the UNIX code,

Santa Cruz Operation, Inc., have reported an annual operating profit only once in the nearly ten years since 1994. As SCO's own public filings with the U.S. Securities Exchange Commission state, its "revenue from the sale of Unix based products has declined since [SCO] acquired" rights to UNIX. By contrast, SCO has admitted that those "who embraced Unix years ago are adopting Linux today." According to SCO, LINUX "can be used to power many of the current and future internet and software needs of businesses, academics and technical institutions around the world" because of its "comprehensive internet functionality, flexibility, customizability and stability, interoperability with multiple systems and networks, low acquisition and maintenance costs, and compliance with technical and communication standards."

6.    In sum, SCO's campaign is designed both to slow the growth of LINUX, and to reverse its failing fortunes by convincing LINUX users that they need to pay SCO a license fee to use the lower-cost LINUX operating system. As SCO's own representatives have proclaimed, if SCO is successful at this effort, it can add "billions" of dollars in undeserved revenues to its declining bottom line. Additionally, SCO's campaign is designed to further what, upon information and belief, has been referred to as the "LINUX Lottery" – the ability to reap personal profit by carefully timed purchases and sales of SCO stock.

7.    SCO has specifically targeted Red Hat with its campaign by repeatedly meeting with financial analysts who cover Red Hat's stock and by, among other things, inviting certain of Red Hat's institutional investors to a briefing held on or about July 22, 2003. During the July 22 briefing, SCO presented information that it knew or should have known to be false and/or misleading about any possible infringement of SCO's UNIX code by Red Hat's LINUX distribution.

8.     SCO's actions, including the climate of uncertainty fostered by SCO about LINUX, have been carried out with the obvious goal of adversely affecting Red Hat's business. Red Hat is, as recognized by SCO, one of the premier distributors of LINUX.

9.     In an effort to have SCO disclose the basis – if any – for its vague public claims about LINUX, Red Hat wrote to SCO on July 18, 2003. In its letter, Red Hat noted that "[f]or months now, officers of [SCO] have made public statements claiming that some portion of Red Hat® LINUX contains code that infringes intellectual property rights of SCO," and have sent letters to Red Hat business partners, customers and potential customers suggesting that they cease using LINUX. Red Hat noted that SCO had "failed to provide any details" in support of its allegations so that Red Hat could refute them, and that SCO's statements were therefore "designed to disrupt and otherwise interfere with Red Hat's relations with its customers."

10.    Red Hat, in its letter, requested that SCO "fully explain the bases, if any, for its public allegations concerning Red Hat Linux," including identifying allegedly infringing source code, the SCO source code that is the basis for its claims, the author and date of authorship of the SCO code, the specific rights claimed to have been violated, and the manner in which SCO claims that Red Hat has violated those rights. Red Hat requested that SCO provide a complete response by July 31, 2003. A copy of this letter is attached as Exhibit A.

11.    SCO did not respond to Red Hat's letter, except to make a telephone call seeking to have Red Hat pay for an unneeded UNIX license. Neither in that telephone call nor in any other written or oral communication to Red Hat, has SCO identified any basis whatsoever for its public claims of infringement.

12.    SCO's lack of response to Red Hat is consistent with SCO's conduct in the litigation SCO has filed against IBM directed to LINUX– posting pleadings on the Internet long

before serving them, and taking a lackadaisical attitude toward pursuing its claims. All of their

actions are inconsistent with actions that would be expected of a company that actually believes

its intellectual property is being used by others without permission.

13.    In light of SCO's consistent refusal to identify any specific source code in the

public LINUX kernel or operating system that SCO is currently claiming infringes its intellectual

property rights, Red Hat brings this action. As more fully explained below, Red Hat seeks a

declaratory judgment that Red Hat® LINUX does not infringe any copyright owned by SCO,

and does not utilize any trade secret owned by SCO. Red Hat further seeks damages, trebled, as

well as injunctive relief, attorneys' fees and costs, for harm caused by SCO's unfair competition

and false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §§ 1125(a), et

seq., unfair and deceptive acts or practices in violation of the Delaware Deceptive Trade

Practices Act, 6 Del. Code § 2532, as well as for violations of common law, including trade libel,

unfair competition, and tortious interference with prospective economic advantage.


## II.    *The Parties*

14.    Red Hat is a corporation organized and existing under the laws of the State of

Delaware, with its principle place of business in Raleigh, North Carolina. Founded in 1993, Red

Hat is the leading provider of the LINUX operating system, and the most recognized LINUX

brand name in the world. Red Hat and its nearly 600 employees offer a broad range of

technologies and services, including annual subscriptions to Red Hat Enterprise LINUX,

consulting, and a global LINUX training program that operates in more than 60 locations

worldwide. Red Hat's customers include well-known companies within the financial and

information industries.

-5-

15.     Upon information and belief, SCO is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Lindon, Utah.  SCO was formerly known as Caldera International, Inc., but changed its name to The SCO Group, Inc. on or around May 16, 2003.  SCO claims certain rights to the UNIX System V operating system source code, which was not developed by SCO engineers, but was purchased from other companies.

### III.    *Jurisdiction and Venue*

16.     This Court has original jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and has supplemental jurisdiction under 28 U.S.C. § 1367 (a).

17.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (b) and (c).

### IV.    *Background*

#### A.    *Proprietary and Open Source Operating Systems*

18.     Over the past few decades, a variety of computer operating systems have been developed, but most are proprietary systems that are expensive, plagued with problems, such as bugs in software, or are not readily adaptable by the user.  For example, Microsoft's DOS and Windows operating systems are proprietary systems that have dominated the personal computer market, but they are not adaptable by users.  The UNIX operating system, originally developed by AT&T in the 1960s, is another proprietary system commonly used in business.  The inherent problems in proprietary operating systems have helped to spawn a movement toward what is known as open source programming.

19.     In open source programming, computer programmers and users can read, redistribute, and modify software source code, allowing the software to evolve and improve

more quickly and efficiently and less expensively.   Unlike proprietary operating systems or

other software in which only a few programmers ever have access to the source code, thousands

of unaffiliated open source programmers collaborate to improve and adapt the software.

20.    Richard Stallman is largely credited with the taking the first important steps in

developing an open source operating system.  In 1985, he published what is known as the "GNU

Manifesto." (GNU is a recursive acronym that stands for "GNU's Not UNIX.")  Stallman's

mission was to develop a UNIX-compatible software system that was free and that would remain

free for anyone who wants to use it.

21.    In 1987, Professor Andrew S. Tanenbaum developed MINIX, a UNIX clone,

using the open source philosophy.  MINIX, however, never became more than a teaching tool for

aspiring programmers.

22.    In 1991, using a book on operating systems published by Tanenbaum, Finnish

college student Linus Torvalds created an operating system kernel for his own use.  Torvald's

system used inexpensive personal computer hardware, but generally provided the same

capabilities as expensive UNIX systems that he used in college.  This kernel became known as

LINUX.  Torvalds made both the kernel and its source code available on the Internet for anyone

to use and improve upon.  He protected its "open" features with the GNU General Public License

("GPL").  The GPL allows access to the software source code, and allows others to use, change

and improve the software source code so long as modified versions of the software that are

distributed to others are licensed on the same terms as the GPL. In other words, the software

remains open, and not proprietary.

23.    As information about LINUX spread and demand for it grew, the LINUX kernel

was combined with various software from Stallman's GNU project to form the GNU/LINUX

operating system, more frequently known simply as LINUX. LINUX quickly developed beyond

the version that was originally designed to operate in Torvald's personal computer. These rapid

advances were enabled by the many programmers throughout the world who were constantly

contributing to and improving LINUX. Within a few years, companies developed and sold

packaged versions of the operating system, including documentation and support, sufficiently

capable to operate on a wider range of computer hardware.

24.    Red Hat, founded in 1993, was one of these companies. Red Hat® Linux is

successful because it is less expensive to operate and is highly stable, and because Red Hat

provides excellent support and service – the traditional selling points of expensive and

cumbersome proprietary software. Red Hat® Linux soon gained widespread popularity for its

reputation as a stable, reliable operating system.

25.    In recent years, LINUX has become the world's fastest growing operating system.

It continues to be adopted by large enterprises for mission-critical roles. For example, a 2002

Merrill Lynch study found that 25% of Chief Information Officers claimed that LINUX is

strategic to their enterprises.

26.    Since its inception, the LINUX kernel was and still is licensed and distributed

under the GPL, which insures that the operating system remains free for copying and further

development. LINUX can be freely copied and modified by anyone who has the talent and

inclination to do so. It can, therefore, be customized or adapted easily to fit the specific needs of

its users.

27.    Over the years, the LINUX kernel has developed and been released in various

versions. LINUX 2.4 kernel was first released for use in January 2001. SCO claims, in its suit

against IBM and generally, that this version of the LINUX kernel is the first version that violated its intellectual property rights.

### B.     *Red Hat's Business*

28.     Red Hat is the most well-known and trusted provider of LINUX software.  In a June 2002 survey by CNET – in which more than 2,200 Information Technology ("IT") professionals were asked which software companies generally would be most relevant to their business in the next five years – Red Hat ranked second.

29.     Red Hat® Linux's success has enabled Red Hat to assemble the world's most talented group of open source engineers. They assemble the LINUX kernel with other user space open source software, compile it, and test it for performance and reliability.  Then they add new features, and test them for compatibility – all while sharing the software with customers, partners, software vendors, and members of the open source community in a structured feedback cycle.

30.     Red Hat Enterprise Linux is the standard for LINUX used by a business enterprise, and features enhanced enterprise performance and an extended release cycle.  Red Hat also offers a range of management services, training, global support, consulting and custom engineering.  Red Hat has entered into partner arrangements with industry leaders such as Intel, Dell, Hewlett-Packard, IBM and Oracle.

31.     Red Hat's focus on open source software has been a financial success.  Even during the last year – a challenging one for technology companies – Red Hat's gross profit rose approximately 18%.

32.     Red Hat's open source products have been developed and made available for licensing under the GPL and similar open source licenses. These licenses permit anyone to copy, modify and distribute the software, subject only to the restriction that any resulting or derivative

-9-

work that is made available to the public be licensed under the same terms. Therefore, although Red Hat owns the copyright to the LINUX software code that it develops, anyone who complies with the GPL can freely copy or modify it, or create derivative works based on Red Hat-authored software code.

## C.    *SCO's Failing Business*

33.    SCO is a provider of computer operating systems and business applications for small businesses. SCO sells both proprietary UNIX and open source LINUX operating systems.

34.    SCO has not been financially successful. In its 2002 Annual Report, SCO stated that "[s]ales of Unix-based products and services have historically been declining" and that SCO OpenServer and SCO UnixWare products "will represent a decreasing percentage of total revenue."

35.    SCO noted that "[i]f our revenue continues to decline or we are unable to efficiently further reduce operating expenses, we may not achieve profitability or generate positive cash flow…. If we are unable to achieve positive cash flow from operations, we will not be able to implement our business plan without additional funding, which may not be available to us."

36.    SCO's business, including that of its predecessor Santa Cruz Operation, Inc., was already in sharp decline at the time the LINUX 2.4 kernel was first released for use in January 2001. Their revenues had fallen by more than a third from 1999 to 2000, producing an operating loss for the year ended September 30, 2000 of more than $50 million.

## D.    *SCO's Wrongful Actions*

37.    It is in the context of the success of LINUX, the decline of UNIX, and the financial pressure generated by a declining business that SCO has recently embarked upon its campaign against LINUX.

-10-

38.    In particular, SCO has developed a licensing program that is based on unfounded

claims of violations of its purported intellectual property rights by LINUX users and developers.

Despite making claims to royalties that SCO proclaims could total in the "billions" of dollars and

that have caused industry analysts to issue cautionary reports about the deployment and use of

LINUX technology, SCO repeatedly has refused to articulate publicly any specific basis for its

claims that would allow the industry meaningfully to evaluate those claims.  SCO also has

refused to provide such information in response to a direct written request by Red Hat sent on

July 18, 2003.

39.    On information and belief, SCO has intentionally and wrongfully done so to

create a cloud of uncertainty over LINUX and, thus, to further its own economic interests.

40.    In particular, SCO has claimed both that certain portions of the LINUX operating

system represent SCO "trade secrets" and that portions were copied from earlier versions of

UNIX, the rights to which SCO says it later acquired from others.

41.    In the first step of its campaign, SCO filed suit against IBM on March 7, 2003,

claiming approximately $1 billion in damages, alleging in part that "trade secrets" disclosed by

SCO to IBM were wrongly contributed by IBM to the LINUX operating system.  Despite the

fact that the LINUX source code is publicly available for anyone, SCO has struggled for more

than four months to identify publicly even one line of LINUX source code that SCO claims to be

a misappropriated "trade secret."

42.    Subsequently, in May 2003, SCO sent approximately 1,500 letters to actual or

potential users of LINUX, claiming that those companies could be liable to SCO for using

LINUX.  The letters stated that SCO "believe[s] that Linux infringes on [its] Unix intellectual

property and other rights."  Further, the letter stated that SCO "intend[s] to aggressively protect

-11-

and enforce these rights" and that "[l]egal liability that may arise from the LINUX development process may also rest with the end user." Again, SCO's letter contained no information specifically identifying *any* aspect of the publicly available LINUX source code that would support SCO's vague claims.

43.    SCO itself, however, has been publicly distributing the LINUX operating system, including the LINUX source code, for at least five years. Recognizing the inconsistency between its claim of "trade secret" misappropriation and its public disclosures of the same allegedly secret information, in May 2003 SCO publicly stated that it would no longer distribute LINUX. However, that statement too is false. SCO continues to offer LINUX source code for public downloading today – more than four months after SCO sued IBM for disclosing UNIX "trade secrets" that SCO continues to disclose itself. For example, through a partnership with three other companies, SCO currently offers UnitedLinux Version 1.0.

44.    Such inconsistencies with SCO's ill-conceived theory of trade secret misappropriation have prompted SCO to expand its claims and pursue additional legal theories. Now, according to SCO, it is not SCO trade secrets that LINUX users are using, but SCO copyrighted code that has been improperly copied.

45.    Specifically, though SCO sued IBM in March 2003 on several legal theories, including misappropriation of trade secrets, SCO began publicly altering its legal theory at least by April 2003. In conjunction with an interview of Chris Sontag, SCO's Vice President and General Manager, one reporter noted that "[a]s you read through today's discussion, please notice how Chris Sontag's statements appear to be laying the groundwork for copyright infringement claims against Red Hat." As of late, the main focus of SCO's campaign is now claims of copyright infringement. SCO explicitly so stated during a recent conference call. SCO

-12-

now publicly distances itself from its earlier broad statements regarding trade secret misappropriation, characterizing its dispute with IBM as a private "contract issue."

46.    SCO's copyright infringement claim fares no better than its earlier trade secret assertions. Once again, SCO hides behind a smokescreen of secrecy, refusing to identify with specificity the lines of code in LINUX that allegedly have been "copied" from UNIX.

47.    To identify the allegedly copied code, however, would enable those who created that code to demonstrate that it is not the property of SCO, was not copied from UNIX, and was developed independently by engineers – including those at Red Hat – who contribute to the open source software.

48.    There is nothing "confidential" about SCO's claims of copyright infringement. Inasmuch as the LINUX code is publicly and freely available for anyone in the world to see, there is no legitimate reason for SCO to hide behind a veil of secrecy in making its allegations about LINUX.

## V.    *SCO's Assertion About Red Hat*

49.    Though SCO is engaged in a lawsuit with IBM, SCO's real target is LINUX, and therefore the developers and providers who improve and distribute it, support it, and help make it a success. Thus, SCO explicitly has claimed that Red Hat, in some unspecified way, has acted wrongfully with regard to SCO's alleged intellectual property rights, and has threatened to take legal action against Red Hat. Notably – once again – SCO makes general and highly publicized claims in the media against Red Hat, but cannot support these claims with specific facts.

50.    For example, Darl McBride, Chief Executive Officer of SCO, has stated that "[t]here will be a day of reckoning for Red Hat ... when this is done." Similarly, in an interview with CNET News.com, Chris Sontag, Vice President and General Manager of SCO, said that SCO "may bring subsequent actions against Linux software developers such as Red Hat...."

-13-

51.    SCO also has falsely and explicitly claimed that Red Hat wrongfully misappropriates portions of SCO's proprietary UNIX software code for use in Red Hat's LINUX products.  For example, Darl McBride stated that "IBM took chunks [of code] out of [Project] Monterey, and gave it away.  You can find it in Red Hat ... Linux."

52.    Similarly, Chris Sontag also stated that "if SCO prevails in their lawsuit with IBM, companies like Red Hat ... may need to revisit their distributions and remove any Unix system code from their distributions and compensate SCO in some way for the software code that they benefited from by using our Unix code."

53.    SCO has been unable to articulate its claims in sufficient detail to give them even a modicum of credibility.  For example, when asked what was copied from UNIX, Chris Sontag generally replied, "[w]e're not talking about the Linux kernel that Linus and others have helped develop.  We're talking about what's on the periphery of the Linux kernel."  However, when pushed for more detail about where the allegedly stolen code is, Sontag replied, "I really can't go any further from what I've commented on."

54.    Tellingly, SCO has not been consistent in even its vague allegations of wrongdoing.  For example, contrary to the statement set forth in the preceding paragraph, SCO's subsequent statements indicated that the offending software is associated with the LINUX kernel.  Recently, when asked whether "there is offending code in the Linux kernel," Darl McBride of SCO answered "Yeah.  That one is a no-brainer."

55.    In the face of SCO's refusal – or inability – to identify any real factual basis for its varying assertions, others in the computer industry have attempted to investigate them.  For example, the Open Source Initiative has published a position paper concluding that the public evidence does not support a claim for misappropriation, because not one of the five key

-14-

technologies present in LINUX can be traced through IBM from the UNIX software code to which SCO claims to have obtained legal rights.

56.    In an attempt to resolve this issue and remove the uncertainty that SCO has intentionally cast on LINUX and open source software in general, Red Hat sent a letter to SCO on July 18, 2003, requesting that SCO specifically identify the bases for its vague claims.  In its letter, Red Hat noted that "[f]or months now, officers of [SCO] have made public statements claiming that some portion of Red Hat® Linux contains code that infringes intellectual property rights of SCO" and noted that SCO had "failed to provide any details" in support of its allegations so that Red Hat could refute them.

57.    Red Hat, in its letter, requested that, no later than July 31, 2003, SCO "fully explain the bases, if any, for its public allegations concerning Red Hat Linux."

58.    As of the filing of this complaint, SCO has not identified any such factual basis.

59.    SCO's illicit strategy is transparent – make loud public claims about alleged intellectual property rights, provide no detail (since it does not exist), and hope to use the time-honored technique of creating fear, uncertainty and doubt to slow the growth and use of LINUX, damage the business of LINUX providers such as Red Hat, coerce unwarranted fees from LINUX users by threats of litigation, and, upon information and belief, even create enough nuisance value to be acquired while running up the price of SCO's stock in the short term, thereby creating various financial opportunities to wrongfully enrich the originators of this scheme.

60.    For example, on July 21, 2003, SCO announced that it would launch a licensing program for LINUX end users, in which end users would pay a license fee to SCO in order to continue using LINUX.  In the same announcement, SCO stated that "[s]ince the year 2001

-15-

63.    Overall, SCO's illicit campaign has had a negative impact on the LINUX industry. For example, several industry analysts have issued cautions against large-scale deployments of LINUX until SCO's claims are either resolved or at least better understood.

64.    Gartner analyst George Weiss advised in a May note that "[a]lthough Gartner has reservations on the merits of (SCO's claims), don't take them lightly." He recommended that users "[m]inimize Linux in complex, mission-critical systems until the merits of SCO's claims or any resulting judgments become clear."

65.    Further, even SCO stated during its recent telephone conference on July 21 that it is aware of customers that were in the process of implementing LINUX but that are now in a "hold pattern."

66.    SCO also has attempted to buttress its own declining business and to affect negatively the business of its competitors by making the same untrue and unsubstantiated statements to stock analysts. For example, in a July 22, 2003 meeting with investors, SCO continued to make its unsubstantiated claims of infringement. Following this meeting, Deutsche Bank issued a report indicating that open source software may have been created wrongfully by copying proprietary software. Notably, in the face of SCO's wrongful comments and the resulting statements from various industry analysts, Red Hat's stock price has decreased approximately 20% between June 30, 2003 and July 30, 2003.

67.    Industry analysts also have noted that SCO's actions have an ulterior economic purpose of forcing an acquisition of SCO, which would be on terms that SCO's poor financial condition would not otherwise justify. Industry Analyst Gordon Haff of Illuminata stated that "suing IBM wasn't enough to get them acquired, so this [sending 1500 letters] is the next stage." Another industry analyst, George Weiss of Gartner, agreed, stating "SCO is really attempting to

-17-

commercial Linux customers have been purchasing and receiving software that includes misappropriated Unix software owned by SCO."

61.     According to SCO, its licensing program will be "very targeted" towards the people who are using the product.  SCO will offer a runtime-only license – a license that provides the end user with only the right to operate or run the software – targeted to end users of LINUX.  Contrary to the principles of open source programming upon which LINUX is based, SCO's proposed license would not allow the users to modify the source code.  Further, SCO does not intend to offer a license to distributors of LINUX, such as Red Hat, that would allow the distributors to then license the end-users.  SCO's licensing program is an attempt to wrongfully disrupt Red Hat's business and its relationships with its customers.  In fact, while explaining its licensing program at is recent conference call on July 21, 2003, SCO specifically stated that it anticipated such a result:  "And so I'm guessing that those end users are going to be looking around to the vendor or vendors involved in supplying [LINUX software] to them whether it's Red Hat or IBM and saying, 'What's up, guys? You know what's happening here?' But, you know, that is going to be their beef with their particular vendor."

62.     Additionally, SCO has stated that it intends to license LINUX only in conjunction with its own products. At its press conference, SCO stated that it would "hold its licensees harmless and will covenant not to sue such licensees for running LINUX in binary format on any CPU licensed under a valid SCO UnixWare 7.1.3. license."  In other words, SCO does not intend to merely license its intellectual property rights.  It intends to tie that license to the use of its own UNIX product.  Thus, SCO is wrongfully attempting to both interfere with and disrupt Red Hat's business as well as employ its alleged intellectual property rights to force current and prospective LINUX users to purchase SCO's UNIX products– or at least to license those products.

-16-

create a fairly large disruption of Linux, and will attempt to take the Linux community with them in the defense of their intellectual property, regardless of how poorly it goes off in the Linux community." Concurring, Gordon Haff stated "[t]he only rational explanation for this is it's a plea for money, essentially, from IBM and others that can't afford to let Linux be derailed."

68.    In addition to the prospective benefit of forcing its acquisition at an inflated price, SCO's wrongful campaign has already enriched its owners.  Despite its bleak financial picture, SCO's stock price has risen to approximately ten times what it was six months ago before SCO began making its meritless and unsupported claims.  Analogizing SCO's combination of a weakening business and rising stock price to the irrational stock valuations of the "dot-com bubble," Frank Haynes of Computerworld noted that "every time SCO makes a new wilder set of legal threats, speculators bid up the price of SCO stock – starting in March, with the IBM law suit, then in May, when the threatening letters were sent, then again in June, when SCO tried to make IBM users pull the plug, and again last week [when SCO unveiled its new copyright theories]."

69.    SCO, in conjunction with its holding company, The Canopy Group ("Canopy"), has already used its wrongfully inflated stock price to transfer millions of dollars to Canopy. Thus, SCO has no incentive to resolve its unsupported and apparently baseless legal threats in the near future.  Again according to Frank Haynes, "[i]f it all sounds like a shell game, well, that's the way Canopy likes to move its companies around.  But in effect, Canopy used SCO's stock price, boosted by Linux threats, to rake in a couple of million dollars in cash behind the scenes.  And apparently it worked. Which means we can expect that as long as Canopy can find ways of cashing in on SCO's threats against Linux users, those threats will keep coming – no matter how little sense they make."

## COUNT I

### (For Declaratory Judgment of Noninfringement of Copyrights, 28 U.S.C. § 2201)

70.    Red Hat repeats the allegations of the preceding paragraphs as if set forth here in full.

71.    No LINUX version sold, used or distributed by Red Hat, or used by Red Hat's customers, infringes any right SCO may have pursuant to Section 106 of the Copyright Act, 17 U.S.C. § 106.

72.    On information and belief, any alleged SCO copyright covering LINUX software is unenforceable.

73.    An actual controversy exists between SCO and Red Hat as to the non-infringement and unenforceability of SCO's copyrights. To afford relief from the uncertainty and controversy raised by this dispute, Red Hat is entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201 that it does not infringe any SCO copyright, that any SCO copyright claimed to cover LINUX software is unenforceable, and that SCO is equitably estopped from asserting any SCO copyright with respect to any LINUX software.

## COUNT II

### (For Declaratory Judgment of No Misappropriation of Trade Secrets, 28 U.S.C. § 2201)

74.    Red Hat repeats the allegations of the preceding paragraphs as if set forth here in full.

75.    The source code for the LINUX kernel and operating system are public and cannot constitute a trade secret.

76.    The use and sale of LINUX by Red Hat and the use of LINUX by Red Hat customers do not misappropriate any SCO trade secret.

BOSTON 1711518v11

77.     An actual controversy exists between SCO and Red Hat as to the non-misappropriation and the validity and the enforceability of SCO's trade secrets.  To afford relief from the uncertainty and controversy raised by this dispute, Red Hat is entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201 that it has not misappropriated any SCO trade secret, that any SCO trade secret claimed to cover UNIX software found in LINUX is invalid, that the source code for the LINUX kernel and operating system are public and cannot constitute a trade secret, and that SCO is equitably estopped from asserting any SCO trade secret with respect to any LINUX software.

## COUNT III
### (False Advertising in Violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))

78.     Red Hat repeats the allegations of the preceding paragraphs as if set forth here in full.

79.     SCO is selling, advertising and promoting UNIX products and services, as well as other products and services, in interstate commerce.

80.     By virtue of the conduct described above, SCO has made false and misleading statements and misrepresentations of fact in commerce in press releases, interviews, in presentations to investors, and otherwise.

81.     SCO statements as described above, have a tendency to deceive and have deceived Red Hat's customers, potential users and other users of LINUX software.

82.     SCO's statements are material and affect the decision as to whether a customer would purchase LINUX software or services.

83.     SCO's activities as set forth above constitute a violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

-20-

84.     On information and belief, SCO has acted willfully, intentionally and in bad faith.

85.     SCO's actions have caused and are causing irreparable harm to Red Hat, and unless permanently restrained and enjoined by this Court, such irreparable harm will continue.

86.     Red Hat is entitled to actual damages for injuries sustained as a result of SCO's violations of 15 U.S.C. § 1125(a).

## COUNT IV

### (Deceptive Trade Practices in Violation of 6 Del. C. § 2532)

87.     Red Hat repeats the allegations of the preceding paragraphs as if set forth here in full.

88.     By virtue of the conduct described above, SCO has represented that its products and services have qualities that they do not have, has disparaged Red Hat's goods and services by making false and misleading representations of fact, and has otherwise engaged in conduct that has caused and is likely to cause confusion and misunderstanding in violation of the Delaware Deceptive Trade Practices Act, 6 Del. C. § 2532.

89.     SCO's actions have caused and are causing irreparable harm to Red Hat, and unless permanently restrained and enjoined by this Court, such irreparable harm will continue.

90.     Red Hat is entitled to actual damages, trebled, for injuries sustained as a result of SCO's violations of the Delaware Deceptive Trade Practices Act.

## COUNT V

### (Unfair Competition)

91.     Red Hat repeats the allegations of the preceding paragraphs as if set forth here in full.

92.     By virtue of the statements made in commerce set forth above, SCO has engaged in unfair competition prohibited by the common law.

-21-

93.     SCO's actions have caused and are causing irreparable harm to Red Hat, and unless permanently restrained and enjoined by this Court, such irreparable harm will continue.

94.     Red Hat is entitled to actual damages for injuries sustained as a result of SCO's violations of the common law prohibiting unfair competition.

## COUNT VI

### (Tortious Interference with Prospective Business Opportunities)

95.     Red Hat repeats the allegations of the preceding paragraphs as if set forth here in full.

96.     Red Hat has relationships and contracts with its customers, business partners and investors and it is reasonably probable that those contracts and/or business opportunities will continue.

97.     By virtue of its conduct described above, SCO tortiously interfered with Red Hat's relationships, contracts and business opportunities with its customers, partners and business investors.

98.     As a direct and proximate result of SCO's actions, Red Hat has suffered harm and will continue to suffer harm.

99.     SCO's actions have caused and are causing irreparable harm to Red Hat, and unless permanently restrained and enjoined by this Court, such irreparable harm will continue.

100.     Red Hat is entitled to actual damages for harm sustained as a result of SCO's tortuous interference with Red Hat's prospective business opportunities.

BOSTON 1711518v11

## COUNT VII

## (Trade Libel And Disparagement)

101.    Red Hat repeats the preceding allegations of the Complaint as if set forth here in full.

102.    By virtue of the statements outlined above, SCO has published or caused to be published oral and written false and/or disparaging statements regarding Red Hat's products, services and business practices.

103.    As a direct and proximate result of SCO's actions, Red Hat has suffered harm and will continue to suffer harm.

104.    SCO's actions have caused and are causing irreparable harm to Red Hat, and unless permanently restrained and enjoined by this Court, such irreparable harm will continue.

105.    Red Hat is entitled to actual damages for harm sustained as a result of SCO's trade libel and disparagement.

## REQUEST FOR RELIEF

WHEREFORE, Red Hat respectfully requests:

A.    A permanent injunction restraining SCO and its officers, directors, partners, agents, servants, employees and attorneys, and those persons in active concert or participation with SCO from representing by any means whatsoever, directly or indirectly, or doing any other acts or things calculated or likely to cause confusion, mistake or to deceive purchasers, business partners and/or investors into believing that Red Hat's LINUX products and/or the LINUX products used by Red Hat's customers and partners violates any of SCO's intellectual property or trade secret rights;

-23-

B.      Under Count I, a Declaratory Judgment pursuant to 28 U.S.C. §§ 2201 et seq. that

Red Hat's and its customers' actions in providing, creating, maintaining, debugging, developing,

copying, selling, transferring, installing, operating, or otherwise using any of Red Hat's LINUX

products and services do not violate any SCO rights under Section 106 of the Copyright Act, 17

U.S.C. §§ 101 et seq., and a Declaratory Judgment that any SCO copyright claimed to be

infringed by Red Hat or its customers in conjunction with any of Red Hat's products is

unenforceable;

C.      Under Count II, a Declaratory Judgment pursuant to 28 U.S.C. §§ 2201 et seq.

that Red Hat's and its customers' actions in providing, creating, maintaining, debugging,

developing, copying, selling, transferring, installing, operating, or otherwise using any of Red

Hat's products and services do not constitute a misappropriation of any SCO trade secret, a

Declaratory Judgment that the LINUX kernel and operating system are public and therefore

cannot constitute a trade secret; and a Declaratory Judgment that any SCO trade secret claimed

to be misappropriated by Red Hat or its customers in conjunction with any of Red Hat's products

is unenforceable;

D.      Under Counts III-VII, an award of actual damages to Red Hat by reason of SCO's

actions in an amount to be established at trial;

E.      An order and judgment that Red Hat's actual damages be trebled pursuant to the

Delaware Deceptive Trade Practices Act;

J.      An award of Red Hat's attorneys' fees and costs incurred in connection with this

matter pursuant to the Delaware Deceptive Trade Practices Act; and

K.      Such further relief as the Court may deem just and proper.

Red Hat requests a trial by jury on all issues so triable.

RED HAT, INC.

By its attorneys

Josy W. Ingersoll (#1088)
Adam W. Poff (#3990)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Telephone: (302) 571-6672

OF COUNSEL:

William F. Lee
Mark G. Matuschak
Michelle D. Miller
Donald R. Steinberg
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

Dated: August 4, 2003

-25-

BOSTON 1711518v11